UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60268-STRAUSS

**INSPIRATIONS NEVADA LLC**,

    Plaintiff,

v.

**MED PRO BILLING, INC.**, *et al.*,

    Defendants.
_____/

## ORDER ON MOTIONS TO DISMISS

THIS MATTER came before the Court upon Keith Booher and Meredith Barry's Motion to Dismiss Counts 6, 7, 10, and 11 of Plaintiff's Second Amended Complaint ("First Motion") [DE 153] and Defendants, Med Pro Billing, Inc. and Melissa Zachariasz's Joint Motion to Dismiss Plaintiff's Second Amended Complaint ("Second Motion") [DE 154]. The Court has reviewed both motions, the responses and replies thereto [DE 156, 157, 159, 160], the Second Amended Complaint ("SAC") [DE 148], and all other pertinent portions of the record. For the reasons discussed herein, the First Motion [DE 153] will be **GRANTED**[1] and the Second Motion [DE 154] will be **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND AND ALLEGATIONS[2]

On or about June 20, 2016, Inspirations-Paradise, LLC ("Paradise") and Defendant Med Pro Billing, Inc. ("Med Pro") entered into a contract entitled the Med Pro Billing Agreement

---

[1] Although the Court finds that the standing and statute-of-limitations arguments raised in the First Motion fail (at least at this stage of the proceeding), the First Motion nevertheless demonstrates that Counts 6, 7, 10, and 11 of the SAC should be dismissed based on the independent tort doctrine.

[2] The facts alleged in the SAC are taken as true and viewed in the light most favorable to Plaintiff as the non-moving party.

("Billing Agreement") [DE 148-1]. SAC ¶ 43. Plaintiff, Inspirations Nevada LLC ("Plaintiff" or "Inspirations") alleges that it is the successor-in-interest of Paradise.[3] *Id.* ¶ 2. The individual Defendants, Melissa Zachariasz ("Zachariasz"), Meredith Barry ("Barry"), and Keith Booher ("Booher") are/were officers of Med Pro. *Id.* ¶ 52.

Under the Billing Agreement, Med Pro was obligated to provide certain services including collection services (referred to in the SAC as the "Collection Obligation") and financial reporting services (referred to in the SAC as the "Reporting Obligation"). *Id.* ¶¶ 43-45. However, Med Pro failed to fulfill these obligations. *E.g.*, *id.* ¶¶ 46-47, 116. Consequently, Plaintiff has sued Med Pro for breach of the Billing Agreement (Count 1).

In addition, Plaintiff has included counts in the SAC for fraud (Counts 2-13) and unjust enrichment (Counts 14-15).[4] Counts 2 and 3 pertain to alleged fraudulent misrepresentations preceding the date of the Billing Agreement, whereas Counts 4-13 pertain to alleged fraudulent misrepresentations following the date of the Billing Agreement. As to Count 2 (against Med Pro) and Count 3 (against Zachariasz), Zachariasz represented that Med Pro would provide Inspirations with "highly effective" services in "utilization review, billing, collections, verification of benefits, and contract negotiation." *Id.* ¶¶ 34, 38-42.[5] However, these representations were false, which Zachariasz knew, and were made to induce Paradise to enter into the Billing Agreement. *Id.* ¶¶ 35, 121-24, 130-33.

---

[3] The factual allegations supporting Plaintiff's successor-in-interest contention are discussed in Part I of the Analysis section below.

[4] As discussed further in Part III of the Analysis section below, the unjust enrichment claims – which are against Med Pro and Zachariasz, respectively – are based upon payments to Med Pro under the Billing Agreement (i.e., the benefit allegedly conferred).

[5] It is these services that Med Pro later contracted to provide under the Billing Agreement. *See id.* ¶ 43.

2

With respect to Counts 4-11, the "Med Pro Team," which consisted of Booher, Barry, and potentially other Med Pro employees, made certain representations to Paradise's representatives during meetings, on December 15, 2016 and December 21, 2016, regarding Med Pro's noncompliance with the Billing Agreement. *See id.* ¶¶ 48-49, 54-55, 67, 70-71. Specifically, the Med Pro Team represented that it "would ensure in the future that Med Pro fulfilled the Collection Obligation and the Report Obligation." *Id.* ¶¶ 55, 71. Though the SAC indicates that the same misrepresentations were made at both December 2016 meetings, Counts 4-7 address the December 15, 2016 misrepresentations (the four counts are separately asserted against the four Defendants), and Counts 8-11 address the December 21, 2016 misrepresentations (again, the four counts are separately asserted against the four Defendants). The SAC does not identify the speaker(s) of the misrepresentations. Instead, to address the propriety of suing the individual Defendants for these misrepresentations, Plaintiff alleges that Booher and Barry joined in, adopted, and affirmed the misrepresentations, that the misrepresentations were made at Zachariasz's direction, that the "Med Pro Officers" (which includes Zachariasz, Booher, and Barry) were aware the Med Pro Team made the misrepresentations, and that the Med Pro Officers or Zachariasz condoned, ratified, and consented to the misrepresentations. *Id.* ¶¶ 50-51, 56-63, 72-79.

Counts 12 and 13 (against Med Pro and Zachariasz, respectively) address similar misrepresentations made on an additional occasion. Specifically, at a February 22, 2017 Skype meeting regarding Med Pro's repeated noncompliance with the Billing Agreement, Zachariasz represented that "Med Pro would ensure in the future that Med Pro performed all obligations required by the Billing Agreement and that Paradise would be able to plan to gain collection of a material amount of outstanding receivables in less than two months." *Id.* ¶¶ 84, 87.

## **LEGAL STANDARD**

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). When a fraud claim is alleged, the complaint "must satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to 'state with particularity the circumstances constituting fraud.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) (citation omitted). To do so, the plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[ ]; and (4) what the defendants gained by the alleged fraud." *Id.* (citation omitted).

To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most

favorable to the plaintiff.  *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019).   But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted).  *See also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

### I.   STANDING

Plaintiff's allegations are sufficient to overcome Defendants' standing challenge at this stage of the case.  As indicated above, Plaintiff alleges that it is Paradise's successor-in-interest.  Defendants, however, argue that the SAC fails to allege sufficient facts to establish Plaintiff's successor-in-interest allegation.

"A party's standing to bring suit 'is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.'" *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1147 (11th Cir. 2019) (quoting *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1359 (11th Cir. 2007)).  A plaintiff may establish standing based on successor-in-interest status in a breach of contract action.  *Buzz Pop Cocktails Corp. v. Booze Pops, LLC*, No. 8:19-CV-1840-MSS-TGW, 2020 WL 2838825, at *3 (M.D. Fla. Apr. 22, 2020); *ZSR Patlayici Sanayi A.S. v. Sarac Distribs. LLC*, No. 2:19-CV-864-FTM-38MRM, 2020 WL 1065231, at *2 (M.D. Fla. Mar. 5, 2020); *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1332 (S.D. Fla. 2002).

Here, Plaintiff first generally alleges that it is the successor-in-interest of Paradise, and it then includes factual allegations in support of its contention. *See* SAC ¶¶ 2-15. The SAC indicates that Paradise was the entity that contracted to do business with Med Pro under the Billing Agreement. *Id.* ¶¶ 12, 43. Before any such business commenced, Inspirations was formed. *Id.* ¶¶ 6, 8, 9. Viewing the allegations in the light most favorable to Plaintiff, the SAC implies that Inspirations was formed to essentially take the place of Paradise, which never commenced operations. *See id.* ¶¶ 2-15. It never commenced operations because the two members of Paradise had a disagreement and chose to part ways. *Id.* ¶¶ 4, 5, 8. In light of that decision, Scott Proctor ("Proctor"), the member of Paradise who had engaged in discussions with Med Pro, formed Inspirations. *See id.* ¶¶ 4, 6, 7, 9, 12, 31-87.

Significantly, Inspirations provided all start-up funding for business operations. *Id.* ¶ 10. Moreover, the day after the Billing Agreement was signed, Proctor informed Med Pro that the legal name of Paradise had to be changed to Inspirations. *Id.* ¶ 12. While Paradise and Inspirations are separate legal entities – Paradise did not simply change its name to Inspirations – Med Pro nevertheless proceeded to conduct business with Inspirations pursuant to the Billing Agreement, and it did so using Inspirations' National Provider Identifier.[6] *See id.* ¶¶ 12-15. Thus, while Plaintiff's name-change theory does not appear to be accurate, its ratification theory otherwise appears to be plausible. *See id.* ¶ 13 ("Med Pro acquiesced and ratified the entity change based

---

[6] *See* Centers for Medicare & Medicaid Services, *National Provider Identifier Standard (NPI)*, https://www.cms.gov/Regulations-and-Guidance/Administrative-Simplification/NationalProvIdentStand (last visited May 25, 2021) ("The National Provider Identifier (NPI) is a Health Insurance Portability and Accountability Act (HIPAA) Administrative Simplification Standard. The NPI is a unique identification number for covered health care providers. Covered health care providers and all health plans and health care clearinghouses must use the NPIs in the administrative and financial transactions adopted under HIPAA. . . . [C]overed providers must also share their NPI with other providers, health plans, clearinghouses, and any entity that may need it for billing purposes.").

upon its receipt of the June 21 Email [reflecting the entity change] and *its continued business relationship with Inspirations*." (emphasis added)).[7] *Cf. ZSR Patlayici Sanayi*, 2020 WL 1065231, at *2 ("Like ZSR argues, it is effectively the same company as YAS, just renamed and under different ownership. At this point—when the Court must accept all well-pled allegations as true—that is enough to allege ZSR is the successor in interest to YAS under the contract.").[8]

## II.  FRAUD CLAIMS (Counts 2-13)

All Defendants argue that Plaintiff's fraud claims are barred by the independent tort doctrine. Zachariasz and Med Pro additionally argue that Plaintiff's fraud claims are barred by the economic loss rule (though, their economic loss rule arguments appear to be independent tort doctrine arguments). As discussed herein, Counts 2-13 are barred by the independent tort doctrine but not the traditional products liability economic loss rule. Notably, Plaintiff failed to respond to Defendants' independent tort doctrine argument in the context of Counts 4-13 (which concern representations that post-date the Billing Agreement), instead only addressing the argument in the

---

[7] Additionally, the Court notes that the Billing Agreement is between Med Pro and Paradise "and any other billing entities (facilities, laboratories, pharmacies, physicians, physician groups, urgent care centers, etc.) for whom [Med Pro] will be providing services . . . as amended by directive from Client from time to time ('Affiliated Entities') collectively the 'CLIENT.'" [DE 148-1] at 2. Though Plaintiff does not appear to have been added as a billing entity in strict compliance with section 3E or 3F of the Billing Agreement, Med Pro was nevertheless informed of Plaintiff's involvement (and, again, transacted business with Plaintiff pursuant to the Billing Agreement), which also renders Plaintiff's ratification theory plausible. Separately, the Billing Agreement states that it "shall be binding on and shall inure to the benefit of the parties hereto and their successors and assigns." [DE 148-1] at 10.

[8] Med Pro and Zachariasz separately argue that "because Plaintiff has failed to allege a sufficient basis that it is Plaintiff's 'successor-in-interest,' all of Paradise's claims are barred by Nevada's statute of limitations for claims purported to be brought on behalf of a dissolved company." Second Motion at 13. This argument fails. First and foremost, the claims in this case were not brought by Paradise or on behalf of Paradise. Second, as discussed above, Plaintiff's successor-in-interest or ratification theory is plausible.

7

context of Counts 2-3 (which concern representations that pre-date the Billing Agreement). Nevertheless, all of Plaintiff's fraud claims fail.

The economic loss rule, and the related independent tort doctrine, have spurred much debate in Florida over the last few decades. In 2013, the Florida Supreme Court attempted to clarify this somewhat murky area of law but arguably made certain aspects murkier. *See generally Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399 (Fla. 2013). It explained that "the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses" (i.e., where there is no personal injury or property damage). *Id.* at 401, 404-05. While noting that the economic loss rule is rooted in the products liability context, the Florida Supreme Court explained that it "has also been applied to circumstances when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." *Id.* at 401-02. In this latter context, the Court referred to the rule as the "Contractual Privity Economic Loss Rule."[9] *Id.* In the products liability context, the Court referred to the rule as the "Products Liability Economic Loss Rule." *Id.* at 403.

---

[9] It is this rule that federal district courts in this state have referred to as the independent tort doctrine or independent tort rule. *See, e.g., Spears v. SHK Consulting & Dev., Inc.*, 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018) ("The doctrine is an off-shoot of the economic loss rule, which barred tort actions 'when the parties were in contractual privity and one party sought to recover purely economic damages in tort for matters arising from contract.'" (citation omitted)); *Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1279 (S.D. Fla. 2014) ("Arguably, Florida's 'independent tort rule' is but a preliminary version, or simple predecessor, of what later became known as the 'contractual privity economic loss rule'—a rule which similarly posits, '[A] tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.'"); *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2019 WL 4739402, at *6 (S.D. Fla. July 10, 2019) (indicating that the independent tort doctrine was previously known as the economic loss rule).

After reviewing the purpose of the economic loss rule, the Florida Supreme Court held "that the economic loss rule applies only in the products liability context." *Id.* at 407. However, in so holding, the Court appears to have been referring to what it termed as the "Products Liability Economic Loss Rule." *See generally id.* Significantly, in discussing the "Contractual Privity Economic Loss Rule," the Court explained that "[w]hen the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement." *Id.* at 402. In that vein, Justice Pariente explained the following in a concurring opinion:

> The majority's conclusion that the economic loss rule is limited to the products liability context does not undermine Florida's contract law or provide for an expansion in viable tort claims. Basic common law principles already restrict the remedies available to parties who have specifically negotiated for those remedies, and, contrary to the assertions raised in dissent, our clarification of the economic loss rule's applicability does nothing to alter these common law concepts. For example, in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim. *See Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982) (holding that there must be a tort "distinguishable from or independent of [the] breach of contract" in order for a party to bring a valid claim in tort based on a breach in a contractual relationship); *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[A] breach of contract, alone, cannot constitute a cause of action in tort. . . . It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence." (citations omitted)).
>
> While the contractual privity form of the economic loss rule has provided a simple way to dismiss tort claims interconnected with breach of contract claims, it is neither a necessary nor a principled mechanism for doing so. Rather, these claims should be considered and dismissed as appropriate based on basic contractual principles—a proposition we reaffirmed in *American Aviation*, where we stated that "when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss." *Am. Aviation*, 891 So. 2d at 542. The majority's decision does not change this statement of law, but merely explains that it is common law principles of contract, rather than the economic loss rule, that produce this result.

*Id.* at 408-09 (Pariente, J., concurring).

In a decision the following year, the Eleventh Circuit considered the impact of *Tiara*. While noting the limitation of the economic loss rule to the products liability context, the Eleventh Circuit recognized that *Tiara* may "have left intact a separate hurdle, namely that 'a party still must demonstrate that . . . the tort is independent of any breach of contract claim.'" *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (quoting Justice Pariente's concurring opinion). As indicated above, federal district courts in this state have referred to this "hurdle" as the independent tort doctrine/rule. *See supra* note 9. In *Lamm*, the Eleventh Circuit noted that "[w]hile the exact contours of this possible separate limitation, as applied post-*Tiara,* are still unclear, the standard appears to be that 'where a breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered negligence.'" 749 F.3d at 947 (citation omitted).

Nonetheless, since *Tiara* and *Lamm*, at least two Florida appellate courts have reaffirmed Florida's independent tort doctrine. The Third District Court of Appeal has reiterated that when "a contract has been breached, a tort action lies only for acts independent of those acts establishing the contract's breach." *Dorvil v. Nationstar Mortg. LLC*, No. 17-23193-CIV, 2019 WL 1992932, at *17 (S.D. Fla. Mar. 26, 2019) (quoting *Peebles v. Puig*, 223 So. 3d 1065, 1069 (Fla. 3d DCA 2017)). *See also Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020) ("The only properly alleged misrepresentation simply has to do with Island's failure to perform under the contract. It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract."). Similarly, the Fourth District Court of Appeal found that Justice Pariente's concurrence in *Tiara* "made clear that a tort still must be independent from a contractual breach

under the common law." *Prewitt Enters., LLC v. Tommy Constantine Racing, LLC*, 185 So. 3d 566, 569 (Fla. 4th DCA 2016).

> In *Peebles*, the Third District Court of Appeal explained:
>
> It is well settled in Florida that, where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud. . . . It is similarly well settled that, for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach. Both of these legal principles are rooted in the notion that, when a contract is breached, the parameters of a plaintiff's claim are defined by contract law, rather than by tort law.

223 So. 3d at 1068 (internal citations omitted).[10]  *See also Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1223 (11th Cir. 2018) ("Under Florida law, '[m]isrepresentations relating to the breaching party's performance of a contract do not give rise to any independent cause of action in tort, [where] such misrepresentations are interwoven and indistinct from the heart of the contractual agreement.'" (citations omitted)).  The alleged misrepresentations in *Peebles* (which post-dated the contract) led to the plaintiff's continued performance under the contract.  223 So. 3d at 1068.  The court found that the defendant's inducement to the plaintiff to perform under the existing contract was not separate and distinct from the breach of contract itself and, thus, did not give rise to an independent fraud claim.  *Id.* at 1068-69.  It additionally recognized that the plaintiff was damaged because the defendant failed to comply with the contract and that the misrepresentations did not cause any separate damages.  *Id.* at 1069.  "Under such circumstances, Florida does not allow a party damaged by a breach of contract to recover the exact same contract damages via a fraud claim."  *Id.*

---

[10] In so stating, the court noted that it was not applying the economic loss rule. *Id.* at 1068 n.4 (citing *Tiara*, 110 So. 3d 399).

11

Like the fraud claim in *Peebles*, Counts 4-13 of the SAC in this case contain fraud claims that are not separate and distinct from the alleged breaches of the Billing Agreement. Counts 4-13 all concern representations that post-date the Billing Agreement. Significantly, Plaintiff alleges in each of these counts that the representations were made "to induce Paradise to continue Paradise's performance under the Billing Agreement . . . ." SAC ¶¶ 145, 157, 169, 181, 193, 205, 217, 229, 238, 247. Moreover, the representations made were simply that Med Pro would perform under the Billing Agreement. Thus, the allegations of Counts 4-13 make crystal clear that these counts set forth claims that are not independent of Plaintiff's breach of contract claim. Accordingly, Counts 4-13 are barred by the independent tort doctrine.

Whether Counts 2-3 are also barred by the independent tort doctrine initially appears to be a closer call, but an examination of the allegations related to these counts and the allegations regarding the Billing Agreement ultimately reveals that Counts 2 and 3 fail. Fraud in the inducement is generally considered to be independent from a breach of contract. *Island Travel*, 300 So. 3d at 1240 n.7 (citing *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996)). However, simply because one pleads a fraudulent inducement claim alleging pre-contract misrepresentations does not absolve the pleader from satisfying the independent tort doctrine. *See Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 77-78 (Fla. 3d DCA 1997). "A critical distinction [to the general rule that fraudulent inducement claims are independent torts] must be made where the alleged fraudulent misrepresentations are inseparably embodied in the parties' subsequent agreement." *Id.* at 77. "[W]here the only alleged misrepresentation concerns the heart of the parties' agreement, simply applying the label of 'fraudulent inducement' to a cause of action will not suffice to subvert the sound policy rationales underlying the" independent tort doctrine. *Id. See also Monsoon, Inc. v. Bizjet Int'l Sales &*

*Support, Inc.*, No. 16-80722-CIV, 2017 WL 747555, at *10 (S.D. Fla. Feb. 27, 2017) ("Regardless of when the alleged misrepresentations were made, the question that must be answered is whether the representations at issue concern the heart of the parties' agreement." (citations omitted)). Stated differently, "where the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the [independent tort doctrine] applies and the parties are limited to pursuing their rights in contract." *Hotels of Key Largo*, 694 So. 2d at 78. *See also Certified Collectibles Grp., LLC v. Globant, LLC*, No. 8:19-CV-1962-SDM-AEP, 2021 WL 1214963, at *4 (M.D. Fla. Mar. 31, 2021) ("Although fraudulent inducement can qualify as an independent tort, the critical inquiry focuses on whether the alleged fraud is separate from the performance of [a] contract. An alleged fraud is not separate from the performance of the contract [if] the misrepresentations forming the basis for the fraud also form the basis for the breach of contract claim." (internal quotation marks and citations omitted)).

Here, the allegations regarding the misrepresentations that form the basis of Counts 2 and 3 are nearly identical to Plaintiff's allegation regarding the services Med Pro contracted to perform under the Billing Agreement. Specifically, the first alleged misrepresentation pre-dating the Billing Agreement was that "Med Pro was highly effective in providing services to Free-Standing Facilities, including, without limitation, Inspirations, with respect to, without limitation, utilization review, billing, collections, verification of benefits, and contract negotiation." SAC ¶ 34. Relatedly, Zachariasz subsequently represented (prior to entry into the Billing Agreement) that "Med Pro would provide Inspirations with, at a minimum, highly effective services with respect to utilization review," "billing," "collections," "verification of patient benefits," and "contract negotiation." *Id.* ¶¶ 38-42. Then, following those representations, the SAC alleges the entry into the Billing Agreement "for provision by Med Pro of medical billing and related services to

13

[Plaintiff's alleged predecessor-in-interest], including, without limitation, utilization review, billing, collections, verification of patient benefits, and contract negotiation." *Id.* ¶ 43. Thus, based on Plaintiff's own allegation, the Billing Agreement expressly provides for the provision of the exact same services that Zachariasz represented Med Pro would provide.[11] In other words, "the only alleged misrepresentation[s] concern[] the heart of the" Billing Agreement.[12] *Hotels of Key Largo*, 694 So. 2d at 77. Therefore, the independent tort doctrine prohibits Plaintiff from pursuing a fraud claim based on these misrepresentations.[13]

### III.   UNJUST ENRICHMENT CLAIMS (Counts 14-15)

Plaintiff's unjust enrichment claims are due to be dismissed. As Med Pro and Zachariasz argue, the Billing Agreement covers the dispute that is the subject of the unjust enrichment counts. "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Alhassid v. Nationstar Mortg.*

---

[11] *Cf. Fla. Holding 4800, LLC v. Lauderhill Mall Inv., LLC*, No. 4D20-174, 2021 WL 1310861, at *2 (Fla. 4th DCA Apr. 7, 2021) ("It is well established that '[a] party cannot recover in fraud for alleged oral misrepresentations that are *adequately covered* or expressly contradicted in a later written contract.'" (quoting *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005)) (emphasis added)).

[12] The use of "highly effective" in the representations is of no moment. As Med Pro and Zachariasz argue, it is mere puffery, and the use of "highly effective" does not constitute any statement of material fact. *See MDVIP, Inc. v. Beber*, 222 So. 3d 555, 561 (Fla. 4th DCA 2017) ("A promise to deliver an 'exceptional' product or service is a matter of opinion rather than fact, and constitutes non-actionable puffery. . . . Plaintiff's fraud claims were non-actionable to the extent that they depended on MDVIP's pledge to provide 'exceptional doctors, exceptional care, and exceptional results.'" (citation omitted)); *IBEW Loc. 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 857 (11th Cir. 2016) ("They claim that the ADT Defendants misled their investors by calling the plan 'thoughtful,' 'effective,' and 'optimal,' among other descriptors. But such puffery is nonactionable." (citing *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1029 (11th Cir. 2003))).

[13] Because Plaintiff's fraud claims are barred by the independent tort doctrine, the Court does not discuss all of Defendants' arguments for dismissal of the fraud claims.

*LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008)). *See also In re Kachkar*, 769 F. App'x 673, 681 (11th Cir. 2019) ("Kachkar's claim for unjust enrichment fails because an unjust-enrichment claim cannot lie where an express contract exists.").

Here, an express contract concerning the same subject matter exists (i.e., the Billing Agreement). In fact, both Counts 14 and 15 are replete with references to the Billing Agreement. Plaintiff alleges, *inter alia*, that the benefits conferred were the "payments to Med Pro *in accordance with the terms of the Billing Agreement*." SAC ¶¶ 252, 259 (emphasis added). Thus, Plaintiff's unjust enrichment claims undoubtedly concern the same subject matter as the Billing Agreement and are, therefore, barred. Notably, Plaintiff failed to address the unjust enrichment claims (and the arguments for dismissal of those claims) in responding to the Second Motion.

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED and ADJUDGED** that the First Motion [DE 153] is **GRANTED**, the Second Motion [DE 154] is **GRANTED IN PART and DENIED IN PART**, and Counts 2-15 of the SAC [DE 148] are **DISMISSED with prejudice**.[14] Additionally, although all claims against Defendants Barry and Booher (and Zachariasz) are being dismissed pursuant to this Order, the Court reserves jurisdiction to consider the motion for sanctions

---

[14] *Cf. Veritas Pers. Servs., Inc. v. ADP TotalSource, Inc.*, No. 1:19-CV-22435-UU, 2019 WL 11506033, at *5 (S.D. Fla. Oct. 21, 2019) ("The negligence count is dismissed with prejudice because it is barred by the independent tort doctrine."); *Kirchner v. Ocwen Loan Servicing, LLC*, 257 F. Supp. 3d 1314, 1325 (S.D. Fla. 2017) ("Throughout their Amended Complaint, Plaintiffs cite to and incorporate language from their mortgage agreements. There is no question that an express contract exists governing the same subject matter in this case, and any unjust enrichment claim would ultimately fail as a matter of law. Though Plaintiffs have not previously been provided leave to amend their unjust enrichment claim, the Court finds any such amendment would be futile as an unjust enrichment claim cannot lie in this case where an express contract exists governing the same subject matter.").

previously filed by Defendants Barry and Booher [*see* DE 163, 164]. If Defendants Barry and Booher wish to proceed on their motion for sanctions, they shall refile it on or before **June 9, 2021**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 26th day of May 2021.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge